**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **Y.B., as parent and next friend of A.B., a minor child,** ) | |
| ) | |
| **Plaintiff/Counter-Defendant,** ) | |
| ) | |
| ) | |
| **vs.** ) | **CASE NO. 3:08-0999** |
| ) | **JUDGE TRAUGER/KNOWLES** |
| ) | |
| ) | |
| **WILLIAMSON COUNTY BOARD OF EDUCATION,** ) | |
| ) | |
| **Defendant/Counter-Plaintiff.** ) | |

## AMENDED REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon the parties' Cross-Motions for Summary Judgment.

Docket Nos. 17, 21. Judge Trauger has previously entered an Order referring this action to the

undersigned "for case management, decision on all pretrial, nondispositive motions, and report

and recommendation on all dispositive motions under 28 U.S.C. § 636(b)(1) . . . ." Docket No.

5.

Plaintiff initiated this action with the filing of a "Complaint for Attorneys' Fees,"

pursuant to a provision of the Individuals With Disabilities Education Act, 28 U.S.C. §

1415(i)(3)(B) (hereinafter referred to as "IDEA").[1] Docket No. 1. The referenced statute

---

[1] Effective July 1, 2005, IDEA was renamed the "Individuals With Disabilities
Education Improvement Act." Pub. L. No. 108-466, 118 Stat. 2715 (2004). While the new

generally provides that the district courts of the United States may award reasonable attorneys'

fees to a "prevailing party" in connection with certain administrative procedures that are required

under IDEA.

Some preliminary background concerning certain substantive and procedural features of

IDEA will be helpful to an understanding of the issues raised in the instant Motions.

In describing IDEA and its purpose, the Sixth Circuit has stated as follows:

> The Individuals With Disabilities Education Act guarantees "free
> appropriate public education" for disabled children. . . .  The Act
> requires local education officials, teachers, and parents to develop
> a written individualized educational program for each disabled
> child detailing his or her level of performance, as well as goals and
> services to be provided by the school system . . .   A parent or
> guardian who feels the requirements of an individual education
> program, or any other statutory requirement, are not being met has
> an opportunity for an impartial due process hearing which shall be
> conducted by the State educational agency . . .  as determined by
> State law or by the State educational agency. . . .  An aggrieved
> party who is not satisfied with the results of the administrative
> proceedings may bring a civil action with respect to the complaint .
> . . in a district court of the United States without regard to the
> amount in controversy. . . .   Furthermore, [i]n any action or
> proceeding brought under this subsection, the court, in its
> discretion, may award reasonable attorneys' fees as part of the
> costs to the parents or guardian of a child or youth with a disability
> who is the prevailing party.

*Payne v. Board of Education,* 88 F.3d 392, 396 (6th Cir. 1996) (citations omitted).

Provisions of IDEA generally require a State educational agency, other State agency, or a

local educational agency ("LEA") to conduct a full and initial evaluation of a child with a

disability prior to the initial provision of special education and related services to such child.  20

---

acronym for the Act could be "IDEIA," the undersigned will refer to the statute as "IDEA," as
have the parties.

U.S.C. § 1414(a). An "individualized education program team" ("IEP Team") is assigned to develop an "individual education program" ("IEP") for each child with a disability. *Id*., § 1414(d).

IDEA also establishes a number of "guaranteed procedural safeguards with respect to the provision of a free appropriate public education" by a State educational agency, State agency or LEA. *Id*., § 1415(a). Insofar as they are relevant to the case at bar, these procedural safeguards require that written prior notice be given to the parents of the child whenever the LEA "proposes to initiate or change" "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." *Id*., § 1415(b)(3)(a).

IDEA also provides that school personnel, under appropriate circumstances, may remove a child with a disability who violates a code of student conduct from their current placement to an "appropriate interim alternative educational setting, another setting, or suspension for not more than 10 school days." 20 U.S.C. § 1415(k)(1)(B). If school personnel seek to order a change in placement that would exceed 10 school days, and the behavior that gave rise to the violation of the school code is determined not to be a manifestation of the child's disability, the relevant disciplinary procedures applicable to children without disabilities may be applied to the child in the same manner and for the same duration in which the procedures would be applied to children without disabilities, with certain exceptions not relevant here. *Id*., § 1415(k)(1)(C).

The question whether the behavior that gave rise to the violation of the school code is a manifestation of the child's disability is determined under the procedure set forth in § 1415(k)(1)(E), which provides in relevant part as follows:

> Manifestation determination. (i) In general. Except as provided in subparagraph (B), within 10 school days of any decision to change

3

the placement of a child with a disability because of a violation of a code of student conduct, the local educational agency, the parent, and relevant members of the IEP Team (as determined by the parent and the local educational agency) shall review all relevant information in the student's file, including the child's IEP, any teacher observations, and any relevant information provided by the parents to determine –

> (I) if the conduct in question was caused by, or a direct and substantial relationship to, the child's disability; or

> (II) if the conduct in question was the direct result of the local educational agency's failure to implement the IEP.

IDEA also requires an "opportunity for mediation," an opportunity for any party to present a complaint and response, and an opportunity for an "impartial due process hearing." 20 U.S.C. §§ 1415(c), (e), (f). The subsection of the statute that governs the impartial due process hearing also contains a requirement that a "Resolution Session" be held prior to the due process hearing. The statute provides in relevant part:

> (f) Impartial due process hearing. (1) In general. (A) Hearing. Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

> > (B) Resolution session. (i) Preliminary meeting. Prior to the opportunity for an impartial due process hearing under subparagraph (a), local educational agency shall convene a meeting with the parents and the relevant members of the IEP Team who have specific knowledge of the facts identified in the complaint –

> > (I) within 15 days of receiving notice of the parents' complaint;

4

(II) which shall include a representative of the agency who has decisionmaking authority on behalf of such agency;

(III) which may not include attorney of the local educational agency unless the parent is accompanied by an attorney; and

(IV) where the parents of the child discuss their complaint, and the facts that form a basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint,

unless the parents or the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e).

(ii) Hearing. If the local education agency has not resolved the complaint to the satisfaction of the parents within 30 days of receipt of the complaint, the due process hearing may occur, and all of the applicable time lines for a due process hearing under this part shall commence.

(iii) Written settlement agreement. In the case that a resolution is reached to resolve the complaint at a meeting described in clause (i) [referring to the Resolution Session], the parties shall execute a legally binding agreement that is –

(I) signed by both the parent and a representative of the agency who has the authority to bind such agency; and

(II) enforceable in any State court of competent jurisdiction or in a district court of the United States.

(iv) Review period. If the parties execute an agreement pursuant to clause (iii), a party may void such agreement within 3 business days of the agreement's execution.

20 U.S.C. § 1415(f)(1).

As discussed above, if the Complaint is not resolved to the satisfaction of the parents

5

within thirty (30) days of the receipt of the Complaint, the due process hearing "may occur." IDEA sets forth certain requirements for the hearing officer who conducts the due process hearing. *Id*., § 1415(f)(3)(A).

Additionally, IDEA provides, "If the hearing required by subsection (f) [referring to the impartial due process hearing] is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency." 20 U.S.C. § 1415(f)(3)(E). In such an appeal, the State educational agency must conduct an impartial review of the findings and decision appealed, and the officer conducting such review must make an independent decision upon completion of such review. *Id*., § 1415(g)(2).

IDEA also provides, "Any party to a hearing conducted pursuant to subsection (f) or (k), or an appeal conducted pursuant to subsection (g), shall be accorded – (1) the rights to be accompanied and advised by counsel . . . ."[2] *Id*., § 1415(h)(1). Decisions made in hearings conducted pursuant to subsection (f) or (k) are also deemed to be "final," unless a party involved in such hearing appeals under the provisions of subsection (g), or unless "any party aggrieved by the findings and decision made under this subsection," brings a civil action in any State court of competent jurisdiction or in a district court of the United States. *Id., § 1415(i).

With regard to attorneys' fees, which are the subject of the instant action and Motions, IDEA provides in relevant part:

> (3) Jurisdiction of district courts; attorneys' fees. (A) In general.

_____

[2] As discussed above, subsection (f) provides for an "impartial due process hearing," and a "Resolution Session" (which may or may not be a "hearing"). Subsection (k) provides for manifestation determinations.

The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy.

> (B)  Award of attorneys' fees.  (i) In general.  In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs –

> (I)  to a prevailing party who is the parent of a child with a disability;

> (II)  to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or

> (III)  to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

. . .

(D)  Prohibition of attorneys' fees and related costs for certain services.  (i) In general.  Attorneys' fees may not be awarded and related costs may not be reimbursed under this section for services performed subsequent to the time of a written offer of settlement to a parent if –

7

<div style="margin-left: 4em;">

(I)      the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

(II)      the offer is not accepted within 10 days; and

(III)      the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

</div>

(ii)      IEP team meetings. Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e).

(iii)      Opportunity to resolve complaints. A meeting conducted pursuant to subsection (f)(1)(B)(i) [relating to the Resolution Session] shall not be considered –

<div style="margin-left: 4em;">

(I)      a meeting convened as a result of an administrative hearing or judicial action; or

(II)      an administrative hearing or judicial for purposes of this paragraph.

</div>

(E) Exception to prohibition on attorneys' fees and related costs. Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer.

*Id*., § 1415(i)(3)(A), (B), (D), (E).

## II. <u>Facts</u>

The Court believes the following facts are undisputed, although the state of the "record" is less than optimal. The parties have attached numerous exhibits to various documents they have filed, and there is no "administrative record." They have also failed to file certain materials that might have been of interest. Moreover, the parties' respective statements of undisputed facts, and the responses thereto, are generally unhelpful in establishing the undisputed facts.[3]

Plaintiff Y.B. is the parent and legal guardian of A.B. At the time of the incident at issue, A.B. was a fifteen year old special education student, who was in the 10th grade at Ravenwood High School ("RHS"). A.B. had been in the Williamson County school system since kindergarten. When he was in the 5th grade, in 2003, he was tested and certified as "Other Health Impaired" under IDEA because of Attention Deficit Hyperactive Disorder ("ADHD").

On May 8, 2007, A.B. poured vodka in a power drink bottle, put it in his backpack, and took it to school. Shortly after arriving at school, he drank some of the vodka and soon became very ill. He was taken to the school's clinic and then transported by ambulance to a hospital.

Two days later, on May 10, 2007, a "Manifestation Hearing" was held, pursuant to 20

---

[3] This is particularly true with regard to Plaintiff's statement of undisputed facts and Defendant's response thereto. Docket No. 24. In his statement of undisputed facts, Plaintiff generally neglected to supply citations to the record, and Plaintiff did not set forth each individual fact in a separate numbered paragraph, as required by Local Rule 56.01(b). Defendant generally raised these objections in response, but often admitted certain facts in spite of its objections. In some instances, Defendant denied, in an argumentative fashion, certain facts that are clearly true. For example, Plaintiff's undisputed fact No. 30 states, "Nothing in the Final Order of August 11, 2008, states that the Board is the prevailing party (Exhibit 14)." Defendant denied that fact, which cannot possibly be disputed in good faith, essentially arguing its own interpretation of what the Administrative Judge had determined. Docket No. 24, p. 13.

U.S.C. § 1415(k)(1)(E).[4]  That same day, a "Manifestation Determination" form was completed. The parties appear to agree that the IEP Team determined that A.B.'s behavior was not a manifestation of his disabilty.[5]

A.B. was suspended from RHS as of May 10, 2007, for a full calendar year (not just for the remainder of the 2007 school year), and he was "referred" to the "Alternative Learning Center" ("ALC").  Docket No. 20-3.  Y.B. was also informed that the parents would be responsible for transportation to and from the ALC.  Docket No. 26-1.  A.B.'s suspension apparently also meant that he would be unable to participate in a summer wrestling program in which he was interested.  Docket No. 20-1, p. 4.

By a letter dated May 30, 2007, Plaintiffs' counsel requested a due process hearing, pursuant to § 1415(f).  Docket No. 21-7.  Plaintiffs generally argued that the IEP team at the

_____

[4]  Both parties refer to the May 10, 2007, proceeding as a "manifestation *hearing*." Subsection (k)(1) does not use the word "hearing," but refers to a "manifestation determination."

[5]  The "Manifestation Determination" form contains the question, "Was the conduct caused by or did it have a direct relationship to the child's disability?"  That question was answered "Yes and No (See meeting minutes).  Parents disagree with other Team members." Docket No. 21-5.

 The "Manifestation Determination" also contains the following language:

> If the student has accumulated 10 days of suspension and if the answer to either of the above questions if *yes*, then the behavior is a manifestation of the student's disability and the student's disability and the student cannot be subjected to disciplinary action, unless the offense is a Zero Tolerance Offense.

 Thus, it might be argued that the IEP Team did not actually resolve the question whether A.B.'s behavior was a manifestation of his disability.  The statute appears to require that manifestation determinations must be unanimous. §§ 1415(k)(1)(e), (f).

10

Manifestation Determination Hearing was not properly constituted, that the IEP team did not

consider A.B.'s anxiety and depression, and that A.B. was erroneously charged with a "zero

tolerance" offense.  The letter further stated in relevant part as follows:

> The remedies suggested are as follows: (1) a finding that this
> behavior was a manifestation of his disability followed by RHS
> conducting a functional behavioral assessment and a behavioral
> intervention plan; (2) a return to [A.B.'s] regular placement
> immediately; (3) expungement of the offense from his record; (4)
> reimbursement of the cost of transportation to and from the ALC;
> (5) further training of RHS's staff in IDEA implementation and
> discipline as well as in understanding disorders such as ADHD and
> depression/anxiety disorder, and (6) *determine that the Parents are*
> *the prevailing party and as such are entitled to be reimbursed for*
> *all attorney's fees and associated costs.*

*Id.*, p. 3 (emphasis added).

On June 11, 2007, the parties held a Resolution Session pursuant to 20 U.S.C. §

1415(f)(1)(B).[6]  Docket No. 20-1, p. 3.  At that session, Defendant offered Plaintiff the following

settlement terms, which were documented in writing two days later on June 13, 2007: (1) A.B.

would return to RHS beginning with the fall 2007 semester, and the ten-day period when he

attended the ALC during May 2007, would be considered as the total of his suspension;[7] (2) an

IEP Team meeting would be convened shortly after the beginning of the fall semester to re-

---

[6] If there are minutes or a transcript of the Resolution Session, neither party submitted them.

[7] A.B. began his suspension on May 10, 2007, and apparently attended the remainder of the 2007 school year at the Alternative Learning Center.  It appears that the 2007 school year ended on May 23, 2007.  Thus, as of the end of the 2007 school year, A.B. had spent 10 days (weekdays) at the Alternative Learning Center.  Under the terms of his original suspension, however, A.B. had been suspended from RHS for a full calendar year, and, under those terms, he would have spent virtually all of the 2008 school year at the Alternative Learning Center (until May 10, 2008).

11

evaluate A.B.; (3) the parents would be reimbursed for their transportation costs during A.B.'s attendance at the ALC, in the amount of $271.60; and (4) A.B. would be allowed to return to his extracurricular activities immediately, which would allow him to participate in the summer wrestling program. *Id.* A.B.'s parents were apparently willing to agree to these terms on the condition that their attorneys' fees to that date be reimbursed. *Id.,* p. 3-4. The Williamson County Board of Education, however, refused to pay *any* attorneys' fees for Plaintiff's counsel. Apparently, the amount of fees Plaintiff sought at that time was $3,150. It is unclear whether this amount included attorneys' fees for Plaintiff's counsel's attendance at the Resolution Session.

Two days after the Resolution Session, on June 13, 2007, counsel for the LEA sent a letter to Plaintiff's counsel "to memorialize the parameters of the discussion between your clients and Williamson County Schools at the resolution meeting on June 11, 2007." Docket No. 17-3. That letter states in relevant part as follows:

> At the resolution meeting, WCS proposed to treat A.B.'s removal from Ravenwood High School within the allowed ten-day period under IDEA, with no further determination of such manifestation as it relates to the disciplinary offense that occurred on May 8, 2007; as such, A.B. would be able to begin the new school year at Ravenwood High School and to begin involvement with extracurricular activities immediately. Furthermore, WCS proposed to convene an IEP Team meeting for the purpose of re-evaluation of a A.B. shortly after the beginning of 2007 school year, in order to confirm A.B.'s exact assessment. Finally, WCS offered to reimburse your clients for transportation costs during the period that A.B. attended the Alternative Learning Center, in the amount of $271.60. *This settlement represents a complete compromise and settlement of all substantive issues, as identified*

> *by your clients at the Resolution meeting in this matter.*[8]

*Id.* (Emphasis added, footnote added.).

With that letter, counsel for the LEA enclosed a document headed "Settlement Statement" the body of which provides as follows:

> It appearing that the parties, having convened at a resolution meeting on June 11, 2007, have reached the following agreement as to terms for full resolution of the due process complaint herein. The parties agree to the following terms:
>
> 1. Williamson County Schools shall deem A.B.'s suspension to have ended, after ten days, on May 24, 2007.
>
> 2. A.B. shall return to Ravenwood High School at the beginning of the 2007-08 school year.
>
> 3. A.B. shall be allowed to participate in all extracurricular activities immediately.
>
> 4. Respondent [Williamson County Schools] shall provide payment for Petitioner's [Y.B. and L.B.] transportation costs between May 11, 2007, and May 24, 2007, in the amount of $271.60.
>
> 5. Respondent shall convene an IEP meeting as soon as practicable at the beginning of the 2007-08 school year to re-evaluate A.B.'s IDEA certification.
>
> 6. This agreement shall represent the full and final agreement of all issues raised in the due process complaint in this matter.

*Id.*, p. 2.

---

[8] The Court interprets the italicized sentence as the view or the desire of Defendant's counsel, although the sentence can be read in different ways. To the extent that Defendant's counsel intended to state that the settlement addressed "all substantive issues, as identified by [A.B.'s parents]," that statement seems plainly incorrect, because the parents had identified another issue that was not specifically addressed, namely their entitlement "to be reimbursed for all attorney's fees and associated costs." Perhaps Defendant's counsel intended that the term "substantive issues" not include the issue of attorneys' fees.

13

By a letter dated June 15, 2007, Plaintiff's counsel informed Defendant's counsel that her clients respectfully declined the offer made at the Resolution Session and reiterated in the Settlement Statement referred to above. Docket No. 20-5. Plaintiff's counsel again raised substantive and procedural issues with regard to the Manifestation Determination Hearing. She also pointed out that the offer made by Defendant was made only after the parents were "forced to hire an attorney and request a Due Process Hearing." Counsel concluded her letter as follows:

> The Parents do not feel WCS's Settlement Statement reflects the facts of this case. WCS have clearly committed procedural violations in disciplining this special education student. A Settlement Agreement has to reflect that the Parents are the prevailing party and as such are entitled to recover their costs associated with ascertaining the rights provided to them under IDEA. They attempted to get this matter settled without involving litigation but their attempts were not taken seriously. Only when a Due Process Request was filed under IDEA did WCS listen to the Parent's concerns. For the Parents now to simply accept a Settlement that does not reflect those violations and the Parent's expenses in asserting those violations defeats the very purpose of the procedural protections provided under IDEA. Parents should not be blackmailed by school systems for asserting the procedural protections of IDEA. For WCS to offer their son the right to be able to participate with his wrestling team this summer and to be able to start back at his high school in August only if the Parents forget about these violations that they have asserted and absorbed the costs of this litigation to assert those rights is truly a choice that Parents should not be asked to make. That kind of choice punishes the child and the parents for the mistakes of the school system.

*Id*.

On July 6, 2007, Plaintiff's counsel wrote a letter to Defendant's counsel, proposing two dates for the due process hearing, and stating in part, "My clients will be out of town from July 20-28th." Docket No. 21-10. That letter also referenced the fact that a Response to Plaintiff's Request for Production of Documents had not been provided, and threatened to file a Motion to

Compel if the documents were not produced by July 10.

On July 7, 2007, Plaintiff's counsel sent Defendant's counsel a letter, the body of which states as follows:

> In response to your letter dated July 6, 2007, regarding the request of the Williamson County Schools for the documentation of my time in the attorney's fees, I am attaching said documentation. I could have provided that documentation that day if anyone had asked. I used time slips and had printed it for my clients before I came.
>
> I'm attaching said documentation as to my time in this case with this letter. I am aware that attorney's fees are not generally recoverable in the Resolution Meeting, and I advised you that my presence was not needed that day. I only attended at your insistence as I assume that you were acting on behalf of your clients. Therefore, I will count those hours as recoverable for my clients as they were charged as a result of this request. I have been in special education since the inception of IDEA and am well aware of what IDEA dictates.

Docket No. 9-1.

It does not appear that either party submitted the July 6 letter referred to, nor did either party submit the documentation attached to the July 7 letter.

On July 9, 2007, Defendant's counsel sent Plaintiff's counsel a letter stating in part that he was not available for the due process hearing on the dates suggested by Plaintiffs. Docket No. 21-11. He also stated that, "a hearing at this time would be premature as I intend to depose both the student, A.B., and Dr. Dozier before the hearing." *Id*. He further stated that the document request responses would be mailed to Plaintiff's counsel on July 10, 2007.

On July 9, 2007, Plaintiffs filed a "Motion to Set" the due process hearing. Docket No. 24, p. 6.

On July 10, 2007, Defendant's counsel sent Plaintiff's counsel a letter, which states in

15

relevant part as follows:

> I am in receipt of your July 6, 2007, letter regarding your billing
> and the attached invoices. First, with regard to attendance at the
> Resolution Meeting, I suggested the attendance of counsel because
> of confusion over facts that had arisen in the case – especially with
> regard to the school system's zero tolerance policy for alcohol
> offenses committed by any student. . . . Your rationale for
> deserving reimbursement for attendance at the Resolution Session
> is quite simply contrary to the plain language of the IDEA.
>
> With regard to your attached billing documentation, I would first
> note that your totals appear to demonstrate discrepancies. At the
> Resolution Meeting on June 11, you requested $3,421.60 for fees.
> However, in your billing entry for the same date, you noted that
> fees to date were $3,140.00. However, in compiling the billing
> totals according to your individual entries, the total fees through
> 6/11/07 were $3,291.60. In addition, at least five of your entries
> include invoices for secretarial work. . . . .
>
> With these factors in mind, and deducting for inappropriate billing
> items, my client has authorized me to make an offer of settlement
> pursuant to the terms already disclosed in my June 15, 2007 letter
> and also for payment of attorney's fees in the amount of $2,354.17,
> which represents a deduction for amounts including the Resolution
> Session and two hours of non-recoverable secretarial work.

Docket No. 17-4.

Also on July 10, 2007, Plaintiff's counsel responded to the foregoing letter in part as

follows:

> In response to the letter of July 10, 2007, and the School's offer of
> $2,354.17 for attorney's fees in the above-styled case, my clients
> decline as now those fees have risen to $4,608.32 plus the $271.60
> offered for transportation costs. Further, the $3,421.60 quoted at
> the Resolution Meeting was for attorney fees of $3,150 plus
> $271.60 for transportation costs that were offered.
>
> As you continually try to post phone [*sic*] this hearing, the costs
> will continue to rise. We are preparing for a hearing and will
> continue to do so unless a firm agreement is reached which
> compensates my clients for the money they have had to spend to

<div align="center">16</div>

> protect their son's rights.  I am attaching the documentation of my
> time through this letter.

Docket No. 20-6.

Once again, neither party has provided the Court with the referenced documentation.

While Plaintiff's counsel stated, " The $3,421.60 quoted at the Resolution Meeting was for

attorney fees of $3,150 plus $271.60," it is unclear whether that amount included her time spent

attending the Resolution Session.  It seems safe to say, however, that Defendant's offer of

attorneys' fees in the amount of $2,354.17 did not include fees for the attendance of Plaintiff's

attorney at the Resolution Session.

On July 12, 2007, Defendant submitted an "Offer of Judgment," which essentially

offered to allow Plaintiff to take judgment against it "pursuant to the terms of the proposed

settlement established and offered to [Plaintiff] at the Resolution Meeting June 11, 2007 . . . ."

Docket No. 21-13.  This "Offer of Judgment" made no mention of paying *any* of Plaintiff's

attorneys' fees, even though, two days earlier, Defendant had offered to pay Plaintiff  $2,354.17

in attorneys' fees.

Apparently during a telephone conference held either June 19, 2007 or July 16, 2007, the

due process hearing was set for July 30, 2007.  Docket No. 24, p. 7; 21-14, p. 1.  On July 16,

2007, Defendant filed a "Motion to Continue" the due process hearing.  *Id.*  In that Motion,

Defendant argued in part as follows:

> Under IDEA, when petitioners do not waive rights under the forty-
> five day rule, they generally possess the right to a decision on the
> merits of the case within forty-five days.  34 C.F.R. 300.512(a).
> However, case law has held that any relief under said provision is
> not warranted where the student's right to a free appropriate public
> education (hereafter "FAPE") was not affected.  *J. D. v. Pawlet
> School District*, 224 F.3d 60, 69 (2nd Cir. 2000).  Respondents

17

respectfully submit the next school year does not even begin until August 13, 2007. Furthermore, as a result of the events leading to the pending due process petition, *A.B. is currently assigned to the Alternative Learning Center of Williamson County Schools where he will begin the next school year*. As such, Respondents will be providing A.B. with FAPE during any subsequent period and there could be no tangible affect [*sic*] by continuing the pending matter. Indeed, the IDEA in this regard demonstrates such an intent on the part of Congress, whereby the general "stay put" standard is reversed in manifestation determination challenges, and keeps the child in the interim alternative education setting ordered by a school during any such challenge, rather than returning the student to the prior placement. 20 U.S.C. § 1415(k)(3)(4); 343 C.F.R. § 300.532-533.

Proceedings in the pending matter were delayed in large part by way of the stay of proceedings that was effectuated by changes in State law. *In advance of the hearing on this matter, Respondents plan to depose the Petitioners [L.B. and Y.B.], the student A.B., and Petitioner's expert witness, Dr. Emmett Dozier.*

Docket No. 21-14 (emphasis added).

Also on July 16, 2007, Defendant's counsel sent Notices of Depositions for A.B., his parents, and his psychiatrist, Dr. Dozier, for July 23, 2007. As discussed above, Plaintiff's counsel had previously informed Defendant's counsel that A.B.'s family would be out of town from July 20-28th. Plaintiff's counsel apparently filed Motions to Quash these Notices.[9]

The parties proceeded to a due process hearing on August 6, 2007, and the Administrative Judge ("AJ") who presided over that hearing subsequently entered a "Final Order." Docket No. 1-1. The Final Order discusses the fact, that as a preliminary matter at the due process hearing, the LEA presented a Motion to Enforce Settlement Agreement. The AJ

---

[9] It appears that Defendant took the deposition of Dr. Dozier, and that, following Dr. Dozier's deposition, Defendant decided not to depose A.B. It is unclear whether Defendant deposed Y.B. prior to the due process hearing.

took that Motion under advisement, and proceeded to hear testimony.  Neither party filed the complete transcript of the due process hearing; Plaintiff has provided the Court with only pages 1 and 197-99 of the hearing transcript.  Defendant called no witnesses and put on no proof at the due process hearing.  Docket No. 1-1, p. 7.

At the end of the hearing, Plaintiff's counsel asked the AJ for a temporary order, "until your Order is written, that this child be allowed to return to Ravenwood High School starting the first day of school."  Docket No. 21-15, p. 2.  The AJ asked for Defendant's response to the Motion, whereupon Defendant's counsel stated as follows:

> Well, I find it interesting, Judge, that this petitioners [*sic*] are so intent on having a hearing and demonstrating that there were supposed procedural errors when this relief has been available and agreed to since June, Judge.  This has been agreed to.  This has been resolved.  This matter has been resolved.  It has been since June, and that's how the case should ultimately be resolved. Judge, we have no objection to an interim Order.  It's been agreed to.  The parents have been given what they have been offered in June.

*Id.*, p. 197-98.  In response, the AJ stated in part:

> Let an interim Order entered [*sic*] then where the petitioner will waive the 45 days, the child is to begin at Ravenwood, and if there needs to be an IEP Team to meet, that will be convened immediately to accomplish the Order.

*Id.*, p. 198-99.

The AJ's "Final Order" was entered more than one year later, on August 11, 2008.  In his Final Order, the AJ denied Defendant's "Motion to Enforce Settlement Agreement," stating in part as follows:

> A *Resolution Meeting* was held between the parties on June 11, 2007.  Therein, the parties reached an Agreement.  The oral dictation of the Agreement was later transcribed, but it was never

19

signed by the parties.  The Attorney for the LEA drafted a document styled "Settlement Statement."  The parents refused to sign the "Settlement Statement" and reputiated the Agreement.

. . .

The issue is, whether an Agreement between the parties, that has not been reduced to a signed writing, and that has been reputiated by one the parties, prior to presentment to the Administrative Judge is enforceable.

. . .

In the present case, the "settlement agreement" did not receive the sanction of the Administrative Court [*sic*] and the Motion to Enforce is DENIED.

Docket No. 1-1, p. 2-3, 6.

The Final Order also contains a section headed "Findings of Fact."  *Id*., p. 7-8.  Those Findings of Fact generally correspond to those facts discussed above at page 9-11.  Additionally, the Final Order contains the following Findings of Fact:

10.  On June 11, 2007 the LEA properly convened a Resolution Meeting with the appropriate members present.  A settlement agreement was reached on all issues at dispute, except for attorney fees.

11.  For no other apparent reason, the Parents reputiated the June 11, 2007 Agreement.

12.  The LEA stipulated to the terms of the June 11, 2007 agreement and offered no further proof in its case in chief.

. . .

15.  Petitioners verbally agreed with the foregoing terms and conditions [as set forth above] except they desired for the LEA to pay their attorney fees.

Docket No. 1-1, p. 7-8.

The Final Order also contains a section headed "Conclusions of Law," which states in

20

relevant part as follows:

> 7.  The Federal District Court is granted the sole authority to award reasonable attorneys fees to prevailing party.  20 U.S.C. § 1415(i)(3)(B)(i)(I).  Attorneys' fees for time actually spent at a Resolution Session pursuant to 20 U.S.C. 1415(f)(1)(B)(i) generally are not compensable under [IDEA].  Nevertheless, if a settlement Offer is rejected at the Resolution Session and the matter goes forward, a parent is still entitled to attorney's fees under the statute for time spent on behalf of the client, before and after the resolution session, if the parent is ultimately the prevailing party.  *See* 20 U.S.C. 1415(i)(3)(B), *see also* 20 U.S C. 1415(i)(3)(E).
>
> . . .

> The Petitioner contends the LEA caused substantive harm by denying AB's parents the opportunity to participate in the "Individual Education Program (IEP)" process on May 10, 2007. . . . The Petitioner has failed to carry the burden of proving that the actions of the student were a manifestation of the child's disability or that the definition of the disability should be expanded to include, factually, the diagnosis of "anxiety and depression."

> Additionally, it appears the concerns of the Parents were addressed at the Resolution Session of June 11, 2007.  There, the remaining issue not resolved appeared to be the attorney fees and legal costs accruing to the onset of the meeting.  The Resolution Session is designed for the parent and child to discuss the due process complaint, and the facts that form the basis of the due process complaint; so that the LEA has the opportunity to resolve the dispute that is the basis for the due process complaint.  It appears from review of the entire record, the substantive issues giving rise to the complaint were resolved in favor of the Petitioner.  This case seems to focus on the inadequacies and procedural failures of the LEA that led to the filing of the complaint rather than AB's basis of harm.

> Therefore, the Court finds, by a preponderance of the credible evidence: (1) AB's actions were not a manifestation of his disability; and (2) the June 11, 2007 meeting [the Resolution Session] resolved all the issues between the parents until that point in time; and (3) the agreement to: A.) return AB to Ravenwood High School. The 10-day period where he attended the "Alternative Learning Center (ALC) during May, 2007 would be

21

considered as the total of his suspension; and B.) The Individualized Education Program (IEP) Team Meeting would be convened shortly after the beginning of the fall semester to evaluate AB; and C.) The Petitioners would be reimbursed for transportation costs during AB's attendance at the ALC, in the amount of Two Hundred Seventy One and 60/100 ($271.60) Dollars; and D.) AB would be allowed to return to his extracurricular activities immediately; and E.) Declare AB the prevailing party[10] was fair, equitable, appropriate, reasonable, and in the best interest of AB. Accordingly, same is made the order of this court and those outstanding issues, not made moot, should be resolved between the parties consistent therewith. . . . .

*Id.*, p. 10-12 (footnote added).

In the "Decision" section of the Final Order, the AJ adopted Items A)-D) discussed above. The decision also stated, "The Petitioners are the prevailing party." *Id.*, p. 13.

Neither party appealed the "Final Order."

### III. <u>Summary Judgment Standards</u>

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J. C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574

---

[10] There is nothing in the record to support the AJ's statement that there was an agreement that A.B. (or Y.B.) would be declared the prevailing party.

(1986).

Fed. R. Civ. P. 56 provides that the non-moving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a non-moving party, however, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.*; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

## IV. <u>Analysis</u>

### A. Plaintiff's Motion for Summary Judgment

The Court will first address Plaintiff's Motion for Summary Judgment. Plaintiff's argument is very simple and it relies upon the plain language of the IDEA. Plaintiff argues that he was the prevailing party who is the parent of a child with a disability and, as such, the Court may in its discretion award him reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(i)(I).

Defendant makes essentially three arguments in response: (1) Plaintiff was not the prevailing party; (2) Defendant made an offer of judgment, and the relief finally obtained by the Plaintiff was not more favorable to the parents than the offer of settlement; and (3) the language of IDEA prohibits an award of attorneys' fees for attendance at the Resolution Session. The Court will discuss these arguments in order below.

23

### 1.  Plaintiff was the prevailing party.

First, Defendant argues that Plaintiff was not the prevailing party, because Plaintiff did not prevail upon "the fundamental issue of law" raised by Plaintiff, namely, whether A.B.'s behavior on May 8, 2007, was a manifestation of his disability.  Docket No. 23, p. 6, 9. Defendant also argues that "Plaintiff did not prevail on the primary or secondary legal issues in his due process complaint."  Docket No. 17, p. 1.

Initially, the Court notes that, even though Defendant did not appeal the AJ's Final Order and his conclusion that Plaintiff was the prevailing party, the AJ's determination on this issue is not binding upon this Court.  *See Kerry B. v. Union 53 Public Schools,* 882 F. Supp. 184, 188 (D. Mass. 1995) ("prevailing party" test is a question of law.).

Second, Defendant's argument that Plaintiff is not the prevailing party because he did not prevail upon "the fundamental issue of law," or the primary or secondary legal issues, is not well-taken.  The Sixth Circuit, following Supreme Court precedent, addressed this point in *Krichinsky v. Knox County Schools,* 963 F.2d 847 (6th Cir. 1992), stating in relevant part as follows:

> The legislative history surrounding this amendment [referring to the 1986 Congressional amendment that permitted the recovery of attorneys' fees under what is now § 1415(i)(3)(B)] indicates that the term "prevailing party" in the amendment has the same meaning as similar terms in other legislation. . . .  By analogy, under 42 U.S.C § 1988, a prevailing party is one who succeeds on any significant issue which achieves some of the benefits plaintiffs sought in bringing suit. . . .   The definition of a prevailing party is a generous formulation that brings the plaintiff only across the statutory threshold. . . . In [*Texas State Teacher's Association v. Garland Independent School District,* 489 U.S. 782, 790], the Supreme Court clarified the [*Hensley v. Eckerhart,* 461 U.S. 424 (1983)] prevailing party standard by rejecting the "central issue" test as contrary to its *Hensley* decision. . . .  The central issue test

24

defines a prevailing party as one who succeeds on the main issue of litigation. Under the central issue test, parties that succeed on secondary issues but fail to succeed on the central issue are denied attorneys fees under section 1988. . . . In rejecting the central issue test, the Supreme Court stated that the incongruence of the central issue test in light of the clear congressional intent that . . . fee awards be available to partially prevailing civil rights plaintiffs is readily apparent. . . . The Supreme Court stated that, at a minimum, to be considered a prevailing party for purposes of fee awards, a plaintiff must be able to point to a resolution of the dispute which changes the relationship between itself and the defendant.

963 F.2d at 848-50 (internal quotation marks and citations omitted). *See also Phelan v. Bell*, 8 F.3d 369 (6th Cir. 1993).

Defendant's own brief recognizes the "any significant issue" test set forth in *Hensley*. Docket No. 23, p. 6. In view of this recognition, it is difficult to understand why Defendant argues that Plaintiff was not the prevailing party because he did not prevail on the manifestation issue.

Furthermore, there is no question that Plaintiff won a resolution of the dispute that changed the legal relationship between A.B. and Defendant. As of May 10, 2007, when the manifestation hearing was held: (1) A.B. was suspended from RHS for a full calendar year; (2) he was "referred" to the ALC; (3) he was not allowed to engage in extracurricular activities from May 10 through at least the rest of the summer (and perhaps even longer); and (4) his parents were responsible for paying for his transportation to and from the ALC.

In his interim Order on August 6, 2007, the AJ ruled that A.B. could return to RHS pending his Final Order, and that an IEP Team meeting would be convened, if necessary.[11]

_____

[11] It is unclear when the school year at RHS started. It is also unclear from the record whether A.B. was allowed to participate in extracurricular activities at RHS during the 2008-2009 school year.

Docket No. 21-15, p. 3-4.

In the AJ's Final Order, the situation had changed markedly from what it had been following the Manifestation Determination: (1) A.B. was no longer assigned to the ALC – rather, the ten-day period he spent at the ALC during May 2007 was to be considered as the total of his suspension; (2) an IEP Team meeting would be convened shortly after the beginning of the fall semester to evaluate A.B.; (3) Plaintiff would be reimbursed for transportation costs during A.B.'s attendance at the ALC in the amount of $271.60; and (4) A.B. would be allowed to return to his extracurricular activities. Docket No. 1-1, p. 12.

Defendant attempts to obscure Plaintiff's prevailing party status by arguing that the only relief Plaintiff obtained "came as a result of the voluntary settlement offer which Plaintiff accepted on June 11, 2007, then reputiated for pursuit of attorney's fees." This argument is similar to Defendant's "Motion to Enforce Settlement Agreement" that it presented to the AJ at the due process hearing and that the AJ rejected. Despite seemingly contradictory language in the AJ's Final Order, there simply was no "Settlement Agreement" reached on June 11, 2007. Defendant's offer at the Resolution Session, which included no payment for any attorneys' fees, was nothing more than an offer that was not accepted by Plaintiff. Defendant obviously wishes to argue that there was a settlement on all issues (or at least on all "substantive" issues) on June 11, 2007. If that is the case, however, it would have been unnecessary for Defendant's counsel to notice the depositions of Y.B., A.B., and Dr. Dozier, or even to have a due process hearing.

**2. The relief finally obtained by the parents is more favorable than the offer of settlement.**

Defendant further relies upon § 1415(i)(3)(D) which, for convenience, will be quoted again below:

26

D. Prohibition of attorneys' fees and related costs for certain services (i) In general. Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if –

    (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than ten days before the proceeding begins;

    (II) the offer is not accepted within ten days; and

    (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parent than the offer of settlement.

The requirements of subsections (I) and (II) have been met. But, with regard to subsection (III), the Administrative Judge in this action did not find that the relief finally obtained by the parents was not more favorable to the parents than the offer of settlement. The Administrative Judge could not possibly have known what the "relief finally obtained by the parents" would be. He made no direct ruling as to whether Plaintiff was entitled to any attorneys' fees. In fact, it seems reasonably clear that the Administrative Judge recognized that, by designating Plaintiff as the prevailing party, he was contemplating that Plaintiff would seek to recover at least some of the attorneys fees he had expended in federal district court.

Moreover, this Court does not find that the relief finally obtained by the parents was not more favorable to the parents than the offer of settlement. Plaintiffs were clearly the prevailing party, and were entitled to at least some of their attorneys' fees. The relief finally obtained by the parents will be determined in the instant action.

**3.  The language of IDEA does not prohibit the recovery of attorneys' fees for**

27

**attendance at a Resolution Session.**

Defendant next argues, "The language of the IDEA holds that a parent may never recover attorneys' fees for attendance of an attorney on behalf of a parent at a Resolution Session. 20 U.S.C. § 1415(i)(3)(D)(iii)." Docket No. 23, p. 13. The referenced provision, however, states only as follows:

> (D) Prohibition of attorneys' fees and related costs for certain services.
>
> . . .
>
> (iii) Opportunity to resolve complaint. A meeting conducted pursuant to subsection (f)(1)(B)(i) [referring to a Resolution Session] shall not be considered –
>
> (I) A meeting convened as a result of an administrative hearing or judicial action; or
>
> (II) An administrative hearing or judicial action for purposes of this paragraph.

That provision says nothing about whether attorneys' fees may be awarded for attendance at a Resolution Session. That provision makes sense only when read and considered with the language immediately preceding that subsection, namely, 20 U.S.C. § 1415(i)(3)(D)(ii), which states as follows:

> (D) Prohibition of attorneys' fees and related costs for certain services.
>
> . . .
>
> (ii) IEP team meetings. Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e).

Defendant does not discuss how subsections (D)(ii) and (D)(iii) mesh. Defendant offers

28

no argument as to exactly which language of the statute "holds that a parent may never recover attorneys' fees for attendance of an attorney on behalf of a parent at a Resolution Session," nor does Defendant cite any cases that construe (D)(ii) and (D)(iii). There are four reasons why the Court cannot accept Defendant's arguments on this point.

First, the language of § 1415(i)(3)(D)(ii) prohibits the award of attorneys fees "relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action . . . ." Thus, although unstated, Defendant's argument apparently is that a Resolution Session is a "meeting of the IEP Team." There is, however, no indication in the statute that a "Resolution Session" is a "meeting of the IEP Team," and it appears that it is not.

Section 1414(d)(1)(B) defines "IEP Team" as follows:

> (B) Individualized Education Program Team.
> The term "Individualized Education Program Team" or "IEP Team" means a group of individuals composed of –
>
> (i) the parents of a child with a disability;
>
> (ii) not less than 1 regular education teacher of such child (if the child is, or may be, participating in the regular education environment);
>
> (iii) not less than 1 special education teacher, or where appropriate, not less than 1 special education provider of such child;
>
> (iv) a representative of the local educational agency who –
>
>> (I) is qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities;
>>
>> (II) is knowledgeable about the general education curriculum; and

29

> (III) is knowledgeable about the availability of
> resources of the local educational agency;
>
> (v) an individual who can interpret the instructional implications of
> evaluation results, who may be a member of the team described in
> clauses (ii) through (vi);
>
> (vi) at the discretion of the parent or the agency, other individuals
> who have knowledge or special expertise regarding the child,
> including related services personnel as appropriate; and
>
> (vii) whenever appropriate, the child with a disability.

Thus, an IEP Team generally consists of at least four or five people: one or both parents, one regular education teacher, one special education teacher, and one representative of the LEA.

Section 1415(f)(1)(B)(I) states in relevant part, "Prior to the opportunity for an impartial due process hearing under subparagraph (A), the local educational agency shall convene a meeting with the parents and *the relevant member* or members of the IEP Team who have specific knowledge of the facts identified in the Complaint . . . ."[12] (Emphasis added.). Thus, a Resolution Session may proceed with the presence of the parents and only one "relevant member" of the IEP Team. A meeting between one IEP Team member and two parents is not a "meeting of the IEP Team." Thus, § 1415(i)(3)(D)(iii) does not bar an award of attorney's fees to Plaintiff for his counsel's Resolution Session.

Second, even if the Resolution Session were considered to be a "meeting of the IEP Team," Defendant's argument fails. As quoted above, subsection (D)(ii) provides in relevant part that attorneys fees may not be awarded "relating to any meeting of the IEP Team *unless*

---

[12] While § 1414(d)(1)(B) recognizes that the parents are members of the IEP Team, § 1415(f)(1)(B)(I) does not appear to recognize that they are. If the parents are not members of the IEP Team, it is even more difficult to characterize the Resolution Session as a meeting of the IEP Team.

*such meeting is convened as a result of an administrative proceeding* or judicial action . . . ." (Emphasis added.). Subsection (D)(iii) provides that a Resolution Session is not to be considered: "(I) a meeting convened as a result of an administrative *hearing* or judicial action; or (II) an administrative *hearing* or judicial action for purposes of this paragraph." (Emphasis added.). Subsection (D)(iii) says nothing about meetings convened "as a result of an administrative *proceeding*." A Resolution Session is clearly a "meeting [that] is convened as a result of an administrative proceeding" – namely the filing of a complaint for a due process hearing.

Third, the Court notes that Congress could very easily have stated in the statute that neither party can recover attorneys' fees for time spent attending a Resolution Session. Congress simply did not so provide.

Fourth, Defendant's argument is, in reality, much more than a simple argument that attorneys' fees cannot be awarded for attendance at a Resolution Session. Defendant's argument, essentially is that: (1) a parent may never recover attorneys' fees for the attendance of their attorney at a Resolution Session; (2) in contravention of point (1), Plaintiff demanded his attorneys' fees for attendance at the Resolution Session; (3) this case would have settled at the Resolution Session, had Plaintiff not insisted on being paid his attorneys' fees for attendance at the Resolution Session; and (4) therefore, Plaintiff is not entitled to recover his attorneys' fees for *any of the work his counsel performed after the Resolution Session*.

Even if Defendant were correct that a prevailing party cannot recover attorneys' fees for attendance at a Resolution Session, it would mean only that Plaintiff's counsel's fees would be

31

slightly reduced.[13]

### 4. Under the circumstances of this case, § 1415(i)(3)(E) overrides any possible prohibition of attorneys' fees for attendance at the Resolution Session.

Defendant also ignores § 1415(i)(3)(E), which states in relevant part, "Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." In the case at bar, Plaintiff was substantially justified in rejecting the settlement offer made at the Resolution Session because it did not include *any* attorneys' fees. Even accepting Defendant's argument that attorneys' fees for attendance at the Resolution Session are barred by subsection (D)(i)(ii), nothing in that subsection (or in any other subsection as far as the undersigned can determine) would have prohibited the award of attorneys' fees for legal advice, meetings, and preparation by Plaintiff's counsel for the Resolution Session, as opposed to attendance at the Resolution Session itself.

The "best" settlement offer Defendant ever made was set forth in the July 10, 2007, letter from Defendant's counsel to Plaintiff's counsel. Docket No. 17-4. That offer had two separate components: (1) the terms the parties had agreed upon at the Resolution Session; and (2) payment of $2,354.17 in attorneys' fees. In the mind of Defendant's counsel, this amount apparently bore some reasonable relationship to the amount of attorneys' fees Plaintiffs had requested at the Resolution Session ($3,150).

The problem, of course, was that Plaintiff had incurred additional attorneys' fees between the end of the Resolution Session (June 12, 2007) and the date of the referenced offer (July 10,

---

[13] At this point, the unsworn time records of Plaintiff's counsel appear to show that she spent 4 hours at the Resolution Session on June 11, 2007, which, at $250 per hour, totals $1,000.

32

2007). According to Plaintiff's counsel's letter dated July 10, 2007, her attorneys' fees had risen to $4,608.32. Docket No. 20-6. This amount was approximately $1,500 more than the fees as of the date of the Resolution Session, and approximately $2,300 more than Defendant had offered.

Plaintiff's counsel was apparently confident that Plaintiff would be the prevailing party and, therefore, that Plaintiff would be awarded some amount of attorneys fees over and above $2,354.17, even if those fees did not include attendance at the Resolution Session. Plaintiff, therefore, was "substantially justified" in rejecting the first, and only, offer that Defendant ever made (at least at the administrative level), which included any amount for attorneys' fees.[14]

**5. There are no special circumstances that would justify denying Plaintiff an award of attorneys' fees.**

As the Sixth Circuit has stated, "The IDEA's fee-shifting provision is to be interpreted consistent with 42 U.S.C. § 1988, the attorney-fees provision for civil rights actions. *Wikol v. Birmingham Public Schools Board of Education*, 360 F.3d 604, 611 (6th Cir. 2004) *citing Phelan v. Bell*, 8 F.3d 369 (6th Cir. 1993). The *Wikol* Court quoted the following language from *Berger v. City of Mayfield Heights,* 265 F.3d 399, 406 (6th Cir. 2001):

> [W]e have previously observed that although the Supreme Court has held [that] . . . it is within the district court's discretion to award attorney's fees under section 1988, in the absence of special circumstances *a district court not merely may but must award fees to the prevailing plaintiff.*

_____

[14] The Court notes that Plaintiff's Complaint was filed in this Court on October 10, 2008. It appears that, shortly before September 8, 2008, Plaintiff's attorney sent Defendant's attorney a letter demanding attorneys' fees of $24,602.50. Docket No. 17-7. Defendant declined that offer, but reiterated that it was willing to make payment for attorneys' fees "in accord with the previous offer of $2,354.17." *Id.*

360 F.3d at 611(emphasis added).

Given the above analysis, the Court is aware of no special circumstances that would override Plaintiff's entitlement to his attorneys' fees as the prevailing party in this action.

## B. Defendant's Motion for Summary Judgment

Defendant essentially makes the same arguments in support of its Motion for Summary Judgment that it made in defense of Plaintiff's Motion for Summary Judgment. Those reasons have been rejected by the Court above.

Defendant relies upon § 1415(i)(3)(B)(i)(III), which provides that an award of attorneys' fees can be made "to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the party's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." Docket No. 18, p. 6-7. As discussed above, Plaintiff, not Defendant, was the prevailing party. Moreover, there is no indication that Plaintiff's complaint or subsequent cause of action was presented for any improper purpose. Plaintiff merely insisted upon not settling this action without a reasonable payment of his attorneys' fees, which he was entitled to under IDEA.

Defendant is not entitled to a judgment as a matter of law in this action.

## V. Recommendation

The undersigned concludes that there is no genuine issue as to any material fact, that Plaintiff is entitled to a judgment as a matter of law for some amount of his attorneys' fees, and that Defendant is not entitled to a judgment as a matter of law. Therefore, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket No. 21) be GRANTED IN

34

PART, that Plaintiff be awarded attorneys' fees, and that Defendant's Motion for Summary Judgment (Docket No. 17) be DENIED.

At this point, it cannot be determined with precision what Plaintiff's attorneys' fees are. Plaintiff's counsel, rather than providing the Court with an affidavit of her own establishing her fees, simply attached "[a] copy of [her] time" as Exhibit B to the Complaint. Docket Nos. 1, p. 7; 1-1, p. 15-21. These time records reflect time billed from May 25, 2007, through October 10, 2008. While these documents appear to be computer-generated, they contain a number of mathematical errors.[15]

Therefore, the undersigned further recommends that Plaintiff's counsel be ordered to submit an appropriate affidavit and exhibits detailing her work and setting forth the amounts of the attorneys' fees she seeks to recover. Defendant should be allowed time to respond, if necessary, to challenge particular entries or fees.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[15]  For example, on May 30, 2007, Plaintiff's counsel billed 1.42 hours at $250 per hour. The "slip value" indicated on the document is $354.17. But 1.42 times $250 is $355, not $354.17.

35

E. Clifton Knowles
United States Magistrate Judge

36