IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| Y.B., as parent and next friend of A.B, a minor child, ) ) ) | |
| Plaintiff/Counter-Defendant, ) ) | |
| v. ) ) | Case No. 3:08-0999 |
| ) | Judge Trauger |
| WILLIAMSON COUNTY BOARD OF EDUCATION, ) ) ) | |
| Defendant/Counter-Plaintiff. ) ) | |

## MEMORANDUM

Pending before the court is an Amended Report and Recommendation ("R&R") (Docket No. 31) that makes recommendations as to the disposition of the cross motions for summary judgment in this case (Docket Nos. 17 and 21).[1] The defendant, the Williamson County Board of Education ("Board"), has filed objections to the R&R (Docket No. 32) to which the plaintiff, Y.B., has responded (Docket No. 34), and to which the Board has replied (Docket No. 38). For the reasons discussed herein, these objections will, with one exception, be overruled, and the dispositions recommended by Judge Knowles will be accepted.

---

[1] As a technical matter, also listed as pending on the docket are the original Report and Recommendation (Docket No. 30) and a Motion *in Limine* (Docket No. 26) that was filed by the defendant in anticipation of a trial of this matter. The only difference between the original Report and Recommendation and the amended R&R is that the amended R&R deletes a footnote from the "Introduction and Background" section. (Docket Nos. 30 and 31.) As they are substantively the same, neither R&R will remain pending on the docket after the entry of this opinion. For purposes of clear docket management, the court will also deny the defendant's pending Motion *in Limine*, as there is currently no trial set in this matter. (Docket No. 29.)

1

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff filed this action seeking attorneys' fees as a "prevailing party" in a dispute that arose, and was in large part resolved, under the Individuals With Disabilities Education Act (IDEA). See 20 U.S.C. § 1415(i)(3)(B). The R&R provides a detailed account of the background facts and law of this dispute, and, therefore, a thorough review of that material is not necessary here. That said, a brief review of this dispute will provide a necessary context to the defendant's objections to the R&R.

Y.B.'s child, A.B., has been in the Williamson County school system for his entire educational career.[2] In 2003, when he was in the fifth grade, A.B. was certified as "health impaired" due to Attention Deficit Hyperactivity Disorder (ADHD). Due to this certification, he has since been regarded as a special education student entitled to the protections of the IDEA, which include an "Individualized Education Program team" or "IEP team" of school officials, teachers, and parents, among others, who are charged with designing an individualized and productive educational program for A.B. *See* 20 U.S.C. § 1414(d).

On May 8, 2007, when A.B. was 15 years old and in the 10th grade at Ravenwood High School (RHS), A.B. brought some vodka with him to school, drank some of it, and then became very ill. A.B. had to be taken from RHS to the hospital, where he spent several hours in treatment before being released.

As discussed in detail in the R&R, when such violations of school rules occur involving special education students, the IDEA provides for a specific protocol to be used to evaluate the

---

[2] Unless otherwise stated, the facts are drawn from Judge Knowles's R&R. (Docket No. 31.)

appropriate next steps. Specifically, a "manifestation determination" occurs, in which members of the IEP team determine whether the incident was a "manifestation" of the student's impairment. *See* 20 U.S.C. § 1415(k)(1)(E).

A.B.'s "manifestation determination" took place two days after the incident, on May 10, 2007. At that meeting, the IEP team, over A.B.'s parents' objection, determined that the alcohol incident was not a manifestation of A.B.'s impairment, and, therefore, consistent with RHS's "zero-tolerance" policy for all students, A.B. was immediately suspended from RHS for one year, and he was referred to the "Alternative Learning Center" (ALC). The Board offered A.B. no means of transportation to the ALC. Using transportation arranged by his parents, A.B. attended the ALC for the brief remainder (about 10 days) of the school year. A.B. was, as indicated above, slated to return to the ALC for the vast majority of the next school year under the sanction levied by the Board.

A.B.'s parents, as indicated above, did not agree with this disposition or with the sanction. Unable to obtain reconsideration of the decision from the Board using informal means, on May 30, 2007, A.B.'s parents, as permitted under the IDEA, filed a written request for a due process hearing before the Tennessee Department of Education. *See* 20 U.S.C. § 1415(f). In their request, A.B's parents noted that they were seeking various forms of relief, including a finding that the alcohol incident was a manifestation of A.B.'s impairment. Under the IDEA, such a manifestation determination would have precluded the long-term suspension and removal from RHS contemplated by the Board. *See* 20 U.S.C. § 1415(k)(1)(F)-(G). In this request for a due process hearing, A.B's parents also indicated that they would seek attorneys' fees as one of their remedies.

Under the IDEA, following a request for a formal due process hearing, the parties are to

hold a less formal "resolution session," to attempt to resolve their dispute without the due process hearing. *See* 20 U.S.C. § 1415(f)(1)(B). At the resolution session in this matter, which was held on June 11, 2007 and which was attended by A.B's parents, representatives from the Board, and counsel for both sides, the defendant offered A.B's parents a settlement that would (1) allow A.B. to return to RHS when school resumed in the Fall and to immediately resume his extracurricular activities at RHS; (2) re-pay the parents $271.60 for their transportation costs to send A.B. to the ALC for ten days; (3) guarantee a re-evaluation meeting in the Fall with A.B. and his "IEP Team;" and (4) establish the ten days spent at the ALC as the total of A.B.'s suspension.

While the parents were amendable to this settlement, they insisted that, in addition, the Board reimburse them for their attorneys' fees to date, which were approximately $3,150. The Board initially refused, and it made no mention of attorneys' fees in a June 13, 2007 letter that re-stated the above settlement offer. As discussed in more detail in the R&R, over the next few months, while preparing for the due process hearing, the parties also exchanged additional settlement offers. In one letter, dated July 10, 2007, the Board offered to pay $2,354.17 in attorneys' fees in addition to the relief provided by the settlement proposed at the resolution session. That day, A.B.'s parents declined the offer, stating that, among other things, with all of the pre-hearing preparation and the settlement discussions, the attorneys' fees in the matter had risen considerably from the $3,150 that had been incurred at the time of the resolution session. Two days later, on July 12, 2007, the Board submitted another proposed settlement, presented as an "Offer of Judgment" to be filed with the Tennessee Department of Education, which re-stated the terms of the settlement offered at the resolution session and, interestingly, made no mention of attorneys' fees. This offer, likewise, was not accepted.

4

With no resolution to the attorneys' fee dispute, the parties proceeded to the due process hearing, with the Board conducting at least one deposition, of A.B.'s physician, in advance of the hearing. On August 6, 2007, a due process hearing was conducted before an Administrative Judge ("AJ") with the Tennessee Department of Education. At the outset, the Board submitted a Motion to Enforce Settlement, which asked the AJ to enforce the settlement that the Board had proposed at the resolution session. The AJ took the motion under advisement and heard testimony. At the conclusion of the hearing, the AJ issued a temporary order, consistent with the agreement of both parties, allowing A.B. to return to RHS.

About a year later, the AJ issued his ruling. At the outset, the ruling denied the Motion to Enforce Settlement because a signed agreement of the parties, sanctioned by the AJ, was never entered. In his findings of fact, the AJ concluded that the alcohol incident was not a manifestation of A.B.'s ADHD. (Docket No. 1 Ex. 1 at 8.) That said, the AJ found that, because (save attorneys' fees) the parties had agreed on the terms of the settlement at the resolution session, those terms should be enforced as the "Decision" of the AJ. (*Id.* at 12-13.) Additionally, in the "Decision" section of the Order, the AJ concluded that A.B. was "the prevailing party" in this dispute. (*Id.*) Neither party appealed this "Final Order," and subsequent informal efforts to resolve the outstanding attorneys' fees issue were not successful.

On October 10, 2008, the plaintiff initiated the proceedings in this court by filing the Complaint for Attorney's Fees. (Docket No. 1.) The matter was referred to Magistrate Judge Knowles. (Docket No. 5.) After discovery, both parties moved for summary judgment.

On October 16, 2009, Magistrate Judge Knowles issued the R&R, concluding that, as the "prevailing party" in the dispute before the AJ, the plaintiff was entitled to attorneys' fees under

5

the IDEA. Judge Knowles also found that, contrary to the Board's arguments, those fees should not be cut off as of the date that various settlement offers were made or reduced such that the plaintiff would not recover fees for his counsel's time at the resolution session. (Docket No. 31 at 34-35.)

Judge Knowles also concluded that the attorneys' fees in this case "cannot be determined with precision" because of errors in counsel's time submissions and a general lack of authentication as to those submissions. (*Id.* at 35.) Therefore, Judge Knowles recommended denying the Board's Motion for Summary Judgment and granting the plaintiff's Motion in part, thereby establishing that the plaintiff is entitled to recovery but requiring additional proof from the plaintiff in the form of "an appropriate affidavit and exhibits" detailing the work performed by plaintiff's counsel before a specific award is made. (*Id.*) The Board filed a timely objection to the R&R. (Docket No. 32.)

## ANALYSIS

The plaintiff filed this Complaint seeking attorneys' fees as the "prevailing party" in the IDEA action that was conducted before an Administrative Judge from the Tennessee Department of Education. The Magistrate Judge issued an R&R finding that the plaintiff was entitled to fees, although the plaintiff would have to submit additional evidence in support of a specific award. The defendant has objected to the R&R, arguing, primarily, that the plaintiff was not actually the prevailing party, and, even if he was, the attorneys' fee award should be substantially limited.

### I. Standard of Review

A motion for attorneys' fees referred to the Magistrate Judge is to be treated as a dispositive pretrial matter. Fed. R. Civ. P. 54(d)(2). As such, under Federal Rule of Civil

6

Procedure 72(b) and 28 U.S.C. § 636(b)(1), the court is required to make a *de novo* determination of any part of the Magistrate Judge's R&R to which specific objection has been made. The district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

## II.     Attorneys' Fees

The Board makes three primary objections to the R&R. First, the Board argues that, because the AJ found that the alcohol incident was not a manifestation of the impairment, A.B obtained no "merits based" relief, and, therefore, he cannot be considered the "prevailing party." (Docket No. 32 at 1-5.) Second, even if the court finds that the plaintiff was the prevailing party in the underlying proceedings, the Board contends that "any recovery should be substantially limited," such that the plaintiff could only recover attorneys' fees that were incurred prior to the June 13, 2007 or the July 12, 2007 settlement/judgment offers. (*Id*. at 5-7.) Finally, the Board argues that, consistent with the findings of numerous courts, the plaintiff should not be entitled to recover attorneys' fees for counsel's attendance at the resolution session. (*Id.* at 7-9.) The court will consider each objection/argument in turn.

### A.     Prevailing Party Status

The IDEA provides that a court, "in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). The Sixth Circuit has confirmed that the test for determining whether a party has "prevailed" in an IDEA proceeding is pragmatic and results-oriented, that is, "plaintiffs may be considered prevailing parties for purposes of attorney fees if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Berger v,*

*Median City Sch. Dist.*, 348 F.3d 513, 526 (6th Cir. 2003)(internal quotation omitted). Stated another way, the Supreme Court has concluded that there must be a "material alteration of the legal relationship of the parties" as a result of the litigation in order for the court to award fees on a "prevailing party" basis. *See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health*, 532 U.S. 598, 604 (2001).

"[S]uccess alone, however, is not enough" to be entitled to attorneys' fees as a "prevailing party." *Tompkins v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 466 (6th Cir. 2006). That is, the "term prevailing party also requires that there be 'a *court-ordered* change in the legal relationship between the plaintiff and the defendant.'" *Id.* (quoting *Buckhannon*, 532 U.S. at 604)(emphasis in *Tompkins*). Indeed, the change in legal relationship requires a "judicial imprimatur" before "prevailing party" status can be granted. *Buckhannon*, 532 U.S. at 605. Both a judgment on the merits and a settlement agreement enforced through a consent decree qualify as such "court-ordered" changes in the legal relationship. *Id.* at 604-05. Therefore, for Y.B. "to be eligible for an award of attorneys' fees as [a prevailing party] under the IDEA, [he] must have (1) succeeded on a significant issue, and (2) this success must be embodied in either a judgment on the merits or in a settlement agreement enforced through a consent decree." *Tompkins*, 199 Fed Appx. at 466.

As noted above, the Board contends that the plaintiff was not the prevailing party in the underlying litigation. (Docket No. 32 at 1-5.) Specifically, the Board argues that the plaintiff sought the due process hearing to obtain relief from the Board's determination that the alcohol incident was not a manifestation of A.B.'s impairment. (*Id.*) And, clearly, in the AJ's unambiguous Final Order, he concluded that the incident was not a manifestation of A.B's disability, meaning that the plaintiff lost on the foundational issue in the dispute. (*Id.*)

8

The Magistrate Judge rejected this argument as "not well taken" and was correct in doing so. (Docket No. 31 at 24.) As the Sixth Circuit indicated in *Berger*, the prevailing party analysis practically considers the goals of the parties at the outset of the litigation or "the benefit the parties sought in bringing suit," and the progress that the parties made toward achieving those goals. *See Berger*, 348 F.3d at 526. Viewed from this perspective, it is clear that the plaintiff was the prevailing party.

That is, from the outset of the litigation through the time of the hearing on August 6, 2007, A.B. was on a long-term suspension from RHS and was slated to spend the next school year at ALC, with his parents paying for his transportation. (Docket No. 31 at 25.) The AJ's Final Order, however, completely changed the circumstances between the parties. As Judge Knowles states: "[i]n the AJ's Final Order, the situation had changed markedly from what it had been following the Manifestation Determination: (1) A.B. was no longer assigned to the ALC – rather, the ten-day period he spent at the ALC during May 2007 was to be considered as the total of his suspension; (2) an IEP Team meeting would be convened shortly after the beginning of the fall semester to evaluate A.B.; (3) Plaintiff would be reimbursed for transportation costs during A.B.'s attendance at the ALC in the amount of $271.60; and (4) A.B. would be allowed to return to his extracurricular activities." (*Id.* at 26.)

In light of this, the Board's objection to this aspect of the R&R, which focuses on the fact that the AJ ruled that the incident was not a manifestation of the impairment, is misplaced. To be clear, there is no dispute that the final conclusion of the AJ was that the incident was not a manifestation of the impairment and that the plaintiff did not prevail on this issue. That said, as indicated above, prevailing party status is determined by taking a broad view of the entire litigation

9

and examining whether the plaintiff, considering his goals at the outset, prevailed on "any significant issue" in the litigation. Here, while the plaintiff may not have prevailed on the foundational issue of manifestation and may have obtained much of the relief in this case through settlement negotiations, he clearly used litigation to produce a favorable result on many substantive issues, and that favorable result is embodied in the AJ's Final Order. As the Magistrate Judge was correct in determining that the plaintiff was the prevailing party in the underlying IDEA dispute, the Board's objection on this point will be overruled.

### B. Attorneys' Fee Cut-Off Date

Assuming that the court concluded that the plaintiff is the prevailing party, the Board contends that the attorneys' fee award should be "substantially limited." (Docket No. 32 at 5.) That is, the Board claims that, as of "either the June 13, 2007 Settlement Offer or Defendant's July 12, 2007 Offer of Judgment," the plaintiff was able to obtain the same relief that he eventually received through the AJ's Final Order, and, therefore, "Plaintiff's [attorneys' fee] recovery should be limited to the time that said terms were first available to Plaintiff, in accordance with the prohibitions found in 20 U.S.C. § 1415(i)(3)(D)(I)." (*Id.*)

The cited provision provides, in the relevant part, that "attorneys' fees may not be awarded . . . in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if . . . the court . . . finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." As to the June 13, 2007 settlement offer, the Board contends that the "Plaintiff was offered the precise terms found in the Final Order" and, under the July 12, 2007 "Offer of Judgment," the plaintiff could have taken "judgment against Defendant under the identical terms and thus be considered a 'prevailing

10

party.'" (Docket No. 32 at 6.)

When the Board made this argument in initial briefing, the Magistrate Judge essentially rejected it out of hand, stating only that the "[p]laintiffs were clearly the prevailing party, and were entitled to at least some of their attorneys' fees. The relief finally obtained by the parents will be determined in the instant action." (Docket No. 31 at 27.) In response to the Board's objections, the plaintiff points out that neither the "proposed Settlement Agreement . . . nor the Offer of Judgment of July 12, 2007 . . . include 'prevailing party' status and would have required further litigation to prove they were the prevailing party." (Docket No. 34 at 6.)

On this issue, the plaintiff and the Magistrate Judge are, again, on the correct side. Contrary to the Board's suggestion, neither the Offer of Judgment nor the June 13, 2007 settlement offer make any mention of attorneys' fees or contain any proviso indicating who is the "prevailing party." (Docket No. 17 Ex. 5; Docket No. 17 Ex. 3.) Moreover, even if either of these proposed agreements would have, at some point, acquired the "necessary judicial imprimatur" that would allow the plaintiff to seek attorneys' fees in this proceeding, both of these documents contain language clearly stating that the proposed settlement would be the "full and final agreement of all issues raised in the due process complaint in this matter." (Docket No. 17 Ex. 5; Docket No. 17 Ex. 3.)

This language would have presented significant challenges to the plaintiff in terms of recovering attorneys' fees in a subsequent proceeding such as this one. *See Tompkins*, 199 Fed. Appx. at 467 (finding that the plaintiff waived potential recovery of attorneys' fees as prevailing party by entering into a consent decree that explicitly did not provide for them). Therefore, the relief that the plaintiff obtained from the AJ, whose Final Order did not foreclose further litigation

11

on the attorneys' fees issue and explicitly deemed the plaintiff the "prevailing party," was plainly "more favorable" than the offers of settlement, which were silent on the "prevailing party" issue, would have arguably foreclosed future litigation, and certainly put the issue of attorneys' fee recovery into significant question. Therefore, this objection will be overruled as well.

### C. Attorneys' Fee Recovery for the Resolution Meeting

Finally, citing various provisions in the IDEA, the Board challenges the Magistrate Judge's ruling that attorneys' fees may be recovered for counsel's time at the resolution session. (Docket No. 32 at 7.) The first provision states that "attorneys' fees may not be awarded relating to any meeting of the IEP team unless such meeting is convened as a result of an administrative proceeding or judicial action . . . ." 20 U.S.C. § 1415(i)(3)(D)(ii). In the next sub-section, the statute states: "a meeting conducted pursuant to subsection (f)(1)(B))(i) shall not be considered a meeting convened as a result of an administrative hearing or judicial action or an administrative hearing or judicial action for purposes of this paragraph." 20 U.S.C. § 1415(i)(3)(D)(iii). Subsection (f)(1)(B)(i) is the section of the IDEA that addresses the resolution session. 20 U.S.C. § 1415(f)(1)(B)(i). The Board contends that the unmistakable intent of these provisions, when read together, is to exclude the recovery of attorneys' fees for counsel's time at the resolution session. (Docket No. 32 at 8.)

A significant number of cases identified by the Board in this round of briefing and located by the court have held that attorneys' fees are not recoverable for counsel's time at a resolution session. *See e.g. Brandon E. v. Dept. of Education, State of Hawaii*, 2008 WL 4602533, *8 (D. Hawaii Oct. 16, 2008)(exploring the statutory framework above and concluding that "all of counsel's time associated with the resolution session is not compensable."); *Davis v. District of*

12

*Columbia*, 2006 WL 3917779, *9 (D.D.C. Sept. 28, 2006)("defendants are correct that a plaintiff is not entitled to attorneys' fees for attendance at resolution meetings. 20 U.S.C. § 1415(i)(3)(D)(iii)."); *J.Y. v. Seattle Sch. Dist. No. 1*, 2007 WL 4111202, *7 (W.D. Wash. Nov. 16, 2007)(same). While the plaintiff claims that the Board requested the presence of plaintiff's counsel at the resolution session and uses this fact to distinguish this case from those cited above, the plaintiff fails to provide any case law that clearly states that attorneys' fees are recoverable for counsel time at a resolution session. (Docket No. 34 at 7-9.)

The R&R rested its conclusion that the plaintiff could recover for the resolution session on three points. First, while the statute states that "attorneys' fees may not be awarded relating to any meeting of the IEP team," the R&R contends that a resolution session is not a meeting of the "IEP team" because, under the IDEA, the "IEP team" "generally consists of at least four or five people: one or both parents, one regular education teacher, one special education teacher, and one representative of the [Local Education Agency]," while a "resolution session," under the IDEA, only requires the presence of at least "one IEP team member" with "specific knowledge of the facts" of the incident and the parents. (Docket No. 31 at 29-30 citing 20 U.S.C. § 1414(d)(1)(B) and 20 U.S.C. § 1415(f)(1)(B)(i)).

For the second point, the R&R concedes, for the sake of argument, that a resolution session is a meeting of the IEP team but still contends that the statute does not preclude recovery of fees for the resolution session. (Docket No. 31 at 30.) In so finding, the R&R reiterates that Section 1415(i)(3)(D)(ii) states: "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action . . . ." 20 U.S.C. § 1415(i)(3)(D)(ii). And again, the R&R reiterates that, in the next sub-section,

13

the statute states that a resolution session "shall not be considered a meeting convened as a result of an administrative hearing or judicial action . . . ."  20 U.S.C. § 1415(i)(3)(D)(iii).  The R&R contends that, here, because the resolution session was convened "as a result of an administrative *proceeding*," and not a hearing, the resolution session here falls outside of the scope of the statutory exclusion.  (Docket No. 31 at 31.)

Third, the R&R "notes that Congress could very easily have stated in the statute that neither party can recover attorneys' fees for time spent attending a Resolution Session.  Congress simply did not so provide."  (*Id.*)

The court respectfully disagrees with the position taken on this point in the R&R.   While the statutory language chosen by Congress could be clearer, the most reasonable reading of that language is that attorneys' fees are not recoverable for time spent at the resolution session. As to the first point in the R&R, the language of Section 1415(i)(3)(D) strongly implies that a resolution session is an IEP team meeting (although perhaps not always a "full team" meeting), because the statute refers to the resolution session in an inclusive manner immediately after generally discussing IEP team meetings.

As to the second point, the court views the statute's use of the terms "hearing" and "proceeding" to be an example of the statute using the terms interchangeably to mean the same thing.  Indeed, Black's Law Dictionary defines a "hearing" as a "proceeding of relative formality." Sixth Edition at 721.

The court is further swayed by the caselaw located by the Board and by the court, all of which persuasively holds that attorneys' fees are simply not recoverable for counsel time spent at a resolution session.  As correctly noted in the R&R, however, this finding promises to only "slightly

14

reduce[]" the fee award for the plaintiff, as the "unsworn time records of Plaintiff's counsel appear to show that she spent 4 hours at the Resolution Session." [3] (Docket No. 31 at 32.)

**CONCLUSION**

For the reasons discussed herein, with one, relatively minor, exception, the objections raised by the Board to Judge Knowles's R&R will be overruled, and the dispositions recommended by Judge Knowles will be affirmed. This case will be referred back to Judge Knowles for further proceedings as to the specific attorneys' fee to be awarded, consistent with the procedure outlined in the R&R. (*See* Docket No. 31 at 35)("the undersigned further recommends that Plaintiff's counsel be ordered to submit an appropriate affidavit and exhibits detailing her work and setting forth the amounts of attorneys' fees she seeks to recover. Defendant should be allowed time to respond, if necessary, to challenge particular entries or fees.")

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[3] The Board has argued that the plaintiff's legally incorrect position that attorneys' fees may be recovered for a resolution session was a sticking point in the initial settlement discussions, and, therefore, "Plaintiff chose to pursue recovery of attorney's fees in deference to a mistaken legal position, which only further underlies the arguments presented above and demonstrates that Plaintiff's recovery of attorney's fees should be limited." (Docket No. 32 at 9.) As indicated above, the litigation persisted (and fees rose considerably) in this case for many reasons, but both parties were plainly responsible for their failure to arrive at a resolution earlier. Indeed, it was the Board that initially refused to compensate A.B.'s parents for their relatively modest attorneys' fees despite the fact that the parents needed to hire an attorney in order to get the Board to abandon its severe (and apparently unwarranted) punishment of A.B.

15